# BURKE *v.* CLAUGHTON.

### ATTORNEY AND CLIENT; CONTRACTS.

Where an attorney is retained by several parties to institute proceedings in their behalf and no completely executed contract in writing is made binding upon all the parties, the contract rests in parol, and to show what it is, the written or oral statements of the parties made at the time to induce others to enter into it,. are proper to be considered by the jury in a suit by the attorney against one of his clients to recover compensation for his services.

No. 445.    Submitted April 24, 1895.    Decided May 20, 1895.

HEARING on an appeal by the defendant from a judgment on verdict in an action to recover compensation for professional services. *Reversed.*

The COURT in its opinion stated the case as follows :

This is a suit instituted in the Supreme Court of the District of Columbia by the appellee, H. O. Claughton, as plaintiff to recover from the appellant, John W. Burke, compensation for professional services pursuant to a contract between the parties. The appellant and others were holders of bonds of Clarke County, in the State of Virginia, issued by that county in aid of the Alexandria, Loudoun and Hampshire Railroad Company on July 22, 1858, and which. were payable in thirty-four years, that is,. on July 22, 1892, with interest coupons attached, which were payable semi-annually on the first day of January and the first day of July in each year. These bonds were guaranteed by the railroad company, which executed a deed of trust by way of mortgage on its property in order to indemnify the county against loss. Default occurred in the payment of interest, and in 1884 many of the coupons remained unpaid.

The railroad company in the meantime had undergone various mutations and transformations. First, with the consent of the General Assembly of Virginia, it was reorganized and changed its name to that of the Washington and Ohio Railroad Company. Afterwards, under legal proceedings instituted in the Circuit Court of the city of Richmond, in the State of Virginia, the property and franchises of the company were sold, and a body corporate was thereupon formed by the purchasers under the name of the Washington, Ohio and Western Railroad Company. This sale, however, was made subject to the lien of the deed of trust given to secure Clarke County for the bonds which it had issued.

The various transformations of the road, or of the company which operated it, did.not, however, secure punctuality in the payments of its obligations; and, as already stated, several instalments of interest were due and unpaid in 1883. In or about the fall of that year, the appellee, Hierome O. Claughton, Esquire, who had been the attorney and legal adviser for many years of the appellant, John W. Burke, or of his banking firm of Burke & Herbert, of Alexandria, in the State of Virginia, was employed by the appellant to enforce his claims on account of the Clarke County bonds and coupons, of which he was a considerable holder. Precisely what the extent of the employment was, is one of the mutters in controversy in this case. But it is clear, at all events, that it was the intention to get as many as possible of the holders of these bonds and coupons to come into a combination to place all their claims in the hands of Mr. Claughton for prosecution. Among these holders, besides Burke & Herbert, were Lewis McKenzie, of Alexandria; George O. Manning and Henry Kellog, of Baltimore, Maryland, and several others.

On May 27, 1884, there was drawn up by Lewis McKenzie, who was a merchant in Alexandria, a memorandum of agreement with reference to this matter, which is in the following terms:

" It is agreed upon the part of J. W. Burke and all others who may come into the arrangement and H. O. Claughton, attorney, that he will undertake the case of collecting the interest now due or may become due, as well as to fix the liability of future payments of Clark interest and principal of bonds through the Virginia Courts, Court of Appeals, or United States Courts, at a compensation of 10 per ct. on the amount of judgment, and that an advance of $250 is to be paid, to be refunded to the parties provided he fails in obtaining judgment.

"Alexandria, May 27th, 1884.

(Signed),     " H. O. Claughton."

This paper, which was in the handwriting of McKenzie, except the figures $250, was signed by Mr. Claughton and by him delivered to McKenzie: The latter subsequently handed it to the appellant, Burke, who, as he himself says, without reading it or ascertaining its contents, or assenting thereto, placed it in the safe of Burke & Herbert, where it remained undisturbed until the latter part of the year 1886. Burke & Herbert soon afterwards paid the stipulated retaining fee of $250, looking to the other holders to reimburse them for their proportional shares.

Mr. Claughton's purpose was to go into the United States Circuit Court for the Eastern District of Virginia, if possible ; and accordingly it was sought to procure as complainants in the proposed suit some holders of bonds who were not residents of that State. Communication was thereupon opened, first, by Burke & Herbert, and afterwards through their intervention by Mr. Claughton, with George O. Manning and Henry Kellogg, who held some of the bonds and resided in the State of Maryland. There was apparently considerable reluctance manifested by both of these gentlemen to enter into the proposed arrangement, and it was not until the 7th of November, 1884, that Mr. Claughton was ready to act by filing a bill in equity, as he did on that day, in the United States Circuit Court for the Eastern District of Virginia, in the name of Henry Kellogg, for himself and all others who should come in.

Several letters appear in the record that passed between the parties during the intervening period. Under date of September 27, 1884, Claughton wrote to Manning, what would seem to have been his first communication to him. In this he stated to him that the rights of the holders of the bonds and their right to a first lien on the property of the railroad company had already been adjudicated by the court of last resort in Virginia; that there was nothing left to be done but to call upon the trustees in the deed of trust to execute their trust by a sale of the property; that the trustees had refused to sell, and that he proposed to file a bill in equity for their removal and the substitution of other trustees to execute the trust. And he added that, as it was desired to sue in the Federal court, it was suggested that Manning should be the complainant for himself and the other creditors, and that he believed that the filing of a bill would produce an immediate settlement.

In a subsequent letter of October 16, 1884, Mr. Claughton wrote to Mr. Manning as follows :

" DEAR SIR : I have delayed answering your letter until I could see Mr. Burke. The contract with Mr. Burke and those who act with him is that I am to receive as compensation ten per centum of the amount of interest which the court shall decide the bondholders are entitled to recover—$250.00 to be paid in advance and to be credited upon the ten per cent. on final settlement. That is all that is to be paid except the court costs, which will be small and for which there will be a decree against the company. Is this explicit enough ? If so, will you show it to Mr. Kellogg, or shall I communicate directly with him ? The bill is all prepared and ready for operation."

Shortly afterwards, under date of October 27, 1884, Burke & Herbert addressed a letter to Kellogg, in which, among other things, they said :

" In the first place, Mr. McKenzie made the contract with counsel Claughton, and, of course, is already in. The cost of collecting your coupons is ultimately 10 pr. ct.

\* \* \*. You pay neither more nor less than 10 per
ct. for collecting, and in the meantime when the *pro rata*
amount of $250, the fee, is known you will be called upon
to pay only your proportion.   We have already paid the
whole $250, and had we the right to go into the Federal
Court would not trouble you one instant."

This seems to have determined the reluctance of Mr. Kel-
logg, and he agreed to become the principal complainant in
the proposed suit, and the bill in equity was filed in the
Federal Court on November 7, 1884, as already stated,
wherein Henry Kellogg was complainant, and the Wash-
ington, Ohio and Western Railroad Company, Clarke
County, and others were made defendants.

To this bill pleas in abatement were interposed both by
the railroad company and by the county to the effect that
a similar suit on behalf of similar creditors was then pend-
ing against the same defendants and for the same precise
purpose in the Circuit Court of Clarke County.   And the
pleas were sustained, and the suit was dismissed by the Fed-
eral Court on January 8, 1885.

Thereupon Mr. Claughton resolved to intervene in the
suit referred to as pending in the circuit court of Clarke
County, which had been instituted on June 13, 1883, in the
name of Harriet E. Cazenove, on behalf of herself and all
other bondholders secured by the deed of trust of August
6, 1858, against the Washington, Ohio and Western Rail-
road Company, Clarke County, and others, and the declared
purpose of which, according to the prayer of the bill of
complaint therein, was "that all the holders of said bonds
and coupons issued as aforesaid to said Alexandria, Lou-
doun and Hampshire Railroad Company by said county of
Clarke may be convened and the amounts due to them and
each of them may be fixed and ascertained ; that the lien
of said deed of trust of August 6th, 1858, may be enforced
by sale of the property conveyed by said deed or of so
much thereof as may be necessary for the purpose of pay-
ng the amounts so ascertained to be due ; that, in order to

prevent multiplicity of suits, the decree to be entered in this cause may provide for the full payment and satisfaction of the whole amount of said bonds and of all the coupons thereto attached or issued therewith, as they respectively become due, to the parties who may show themselves entitled to such payment; that a receiver may be appointed to take charge of said railroad and of its property and effects, in order to the payment of the amounts due and secured by said deed of trust of August 6th, 1858; that said county of Clarke, a defendant hereto, may be held liable for the payment of said bonds and coupons," &c.

It does not appear whether the appellee or any others of the clients of Mr. Claughton were formally made parties to this suit. The inference would be that they were not. But there had been a reference in the cause to a commissioner to ascertain and report the amounts severally due to the holders of bonds or coupons, and the value of property conveyed to secure them; and in his report, among other items, it appears that the appellant, J. W. Burke, held bonds to the par value of $8,500; and that there was due to him for interest from July 1, 1882, to July 1, 1885, interest to the amount of $2,250.

In October, 1886, this cause came on to be heard on the report of the commissioner; and then Mr. Claughton appeared and argued the case, presumably in connection with the attorneys who had filed the bill and conducted the proceedings to this point; and on October 6, 1886, a decree was rendered by the court, confirming the report of the commissioner, holding that Clarke County was liable for the principal and interest of the bonds, and that the property covered by the deed of trust and now in the hands of the defendant railroad company was subject to its lien, and appointing trustees to make sale of this property in the event that the overdue coupons were not paid within a certain specified time. The decree went on to provide also that the bill should be retained, so that the complainant and other creditors might come in at any time afterwards upon

default in the payment of any of the coupons thereafter to become due, or of the bonds themselves upon their maturity. From this decree appeal was taken by the defendants in the cause; but the decree was affirmed by the Court of Appeals of Virginia on September 29, 1887. Mr. Claughton participated also in the argument before the Court of Appeals.

On or about February 1, 1888, Mr. Burke received for himself and for his firm of Burke & Herbert, from the railroad company, the sum of $6,835.20, as it would seem, on account of the overdue coupons and interest thereon; and thereupon he tendered to Mr. Claughton, in payment for his professional services, the sum of $544.50, which was ten per centum of the amount collected ($683.52), less a credit of $139.02, to which he claimed to be entitled. This Mr. Claughton refused to receive. Differences of opinion had already arisen between them as early as November or December of 1887, in regard to the basis upon which his compensation should be computed, which Mr. Claughton claimed was the value of the whole judgment or decree of the circuit court securing, according to Mr. Claughton's claim, both the principal and interest of the bonds, and as well that portion which was not due as that which was due, amounting in the aggregate to $20,264.37, on which he claimed to be entitled to $2,026.43. Mr. Burke, on the contrary, maintained that the contract between them was that Mr. Claughton should receive only ten per centum of the amount of the coupons collected. The matter seems to have remained in abeyance for nearly two years; and then, on January 2, 1890, the present suit was instituted.

Apparently there have been two trials; and it is the record of the second trial that is now before us. At this trial the facts were elicited which have here been stated. The testimony consisted mainly of the respective statements of the plaintiff and defendant, and of the correspondence to which reference has been made; and to none of this testimony does there seem to have been any objec-

tion interposed.  At the conclusion of the testimony five instructions on each side were requested, of which those for the plaintiff were all granted, and three of those for the defendant.  The court also charged the jury of its own motion ; and to several statements of the charge, as well as to the granting of two of the plaintiff's instructions and to the refusal of the court to grant the two instructions for the defendant which were  rejected, exception was taken on behalf of the defendant.

Verdict and judgment were in favor of the plaintiff for the sum of $1,911, with interest from February 5, 1887 ; and from this judgment the defendant has appealed.

[The two instructions requested by the defendant, and which were refused, were as follows :

" 3.  In determining what the contract and agreement between the plaintiff and the defendant really was in respect of the professional services to be rendered by the plaintiff in the matter of the defendant's Clarke County bonds and the  interest thereon, the  jury has the  right and it is their duty to take into consideration  the statement and writings  made by the plaintiff and defendant concerning their agreement at or about the time it was made or being executed, and if the jury shall find from the evidence that the plaintiff wrote the letter in evidence to Mr. Manning dated the 16th day of October, 1884, and stated therein his understanding of the meaning of what is therein referred to as the Burke contract, intending thereby to refer to the contract or agreement between the plaintiff and the defendant in respect of said Clarke County bonds, and shall further find from the evidence that the defendant on the 27th of October, 1884, wrote to Mr. Kellogg the letter in evidence bearing said date, and stated therein his understanding of the  meaning of the agreement between himself and the plaintiff in respect of the plaintiff's said professional employment and the compensation therefor, and that the plaintiff and the defendant in said letters gave the same interpretation and meaning to said agreement, and the said agree-

ment was executed according to such interpretation, then the interpretation and meaning of said contract as agreed to by both the plaintiff and the defendant was binding on both, and it was not within the power of the plaintiff or the defendant to change the terms or the meaning of said agreement or to give the same a new interpretation without mutual consent."

" 5. It is for the jury to determine upon the whole evidence what the agreement between the plaintiff and the defendant was in respect of the compensation to be paid to the plaintiff for his professional services in respect of the defendant's Clarke County bonds, and the interest thereon and upon what the ten per centum mentioned in the paper-writing in the evidence was to be computed, and if the jury shall find that the plaintiff was employed by the defendant and others in the fall of 1883 to collect the overdue interest on the said bonds under a verbal agreement, and that the plaintiff signed the paper-writing in evidence dated May 27, 1884, and that said paper was delivered to the defendant by Mr. McKenzie and was retained in the possession of the defendant, although not signed by him, and that the plaintiff at that time and afterwards and while his agreement was being executed understood that the ten per centum mentioned in said paper-writing was not to be computed on or in respect of the principal of said writing, but on the interest collected, and so stated in a letter to Mr. Manning dated Oct. 16th, 1884, if they find that the plaintiff wrote said letter, and if they further find that the defendant also understood that the agreement of said plaintiff was not for a compensation to be computed by a percentage on the principal of said bonds, but only on the interest due and to become due thereon, then the plaintiff cannot recover in this action any compensation in respect of the recovery or payment of the principal of said bonds, but only in respect of the interest thereon."

The instructions granted on behalf of both parties are included in the charge of the court, which was as follows:

" Gentlemen of the jury, the evidence which has been ad-

duced in this case indicates this state of facts beyond dispute: That some years ago the county of Clarke, in the State of Virginia, issued one hundred thousand dollars' worth of bonds, which were guaranteed by the Loudoun and Hampshire R. R. Co. and secured by a deed of trust upon the railroad. The original liability on these bonds, so far as the railroad company was concerned, was the liability of the Loudoun and Hampshire R. R. Co., and that liability was, it is claimed, transferred by some judicial proceedings to the Washington, Ohio and Western Railroad Company. A number of these bonds were held by the defendant in this case, Mr. Burke. Some of them were held by Mr. Mc- Kenzie, whose name has figured in the evidence in this case, and others were held by other parties whose names have been used in evidence, and others by persons whose names have not been used in the course of this trial.

"At the time when this controversy begins or when the relations of the parties with reference to this particular subject-matter began it appears that the coupons upon these bonds to the extent of three years, representing the interest upon the bonds, were overdue and unpaid. There had been a proceeding in the courts of Virginia in a case which is called the Lewis case, in which both the county of Clarke and the Washington and Ohio R. R. Co. had denied their liability upon these bonds. It appears that in 1883 a bill had been filed in the county of Clarke by Mrs. Cazenove which sought to fix the liability of the railroad company and the county of Clarke for these bonds, as well as to ascertain and determine by a judgment the rights of Mrs. Cazenove with reference to the interest, and also the rights of all parties who might come into that case and litigate it.

"It appears that the responsibility of both the county of Clarke and of the Washington and Ohio R. R. Co. was denied by the county and by the railroad company, and at the time the transaction occurred between the plaintiff and the defendant with reference to these bonds not only was the previous interest overdue and unpaid, but this question of

the responsibility of these two parties—the county of Clarke and the railroad company—was regarded as still outstanding and to some extent unsettled. That question was claimed to have been determined in a proceeding in the courts of Virginia.

" It was then that Mr. Claughton, the plaintiff in this action, filed a bill in the circuit court of the United States at Richmond seeking to secure the removal of the trustees who had failed to respond to a demand for a sale to pay this overdue and unpaid interest, and to fix the liability for these unpaid coupons. That litigation, as you have been told, resulted in nothing. The bill was dismissed by order of the Circuit Court of the United States, and thereafter, as it appears both by the testimony of the plaintiff and the defendant, the plaintiff was requested to protect the defendant's interest in the cause which had been instituted by Mrs. Cazenove in the county of Clarke in the courts of Virginia.

" It is claimed on the part of the defendant that he had made an oral contract with the plaintiff with reference to this litigation which was that the plaintiff should be paid, if successful in the litigation either in the Circuit Court of the United States or in any subsequent litigation, ten per cent. only upon the amount of interest collected. The plaintiff claims, on the other hand, that he made and entered into a contract with the defendant by which the defendant and others who should come into that arrangement obligated themselves to pay him, in consideration of the services that he should render in collecting the overdue coupons representing the interest and in fixing the liability of the county of Clarke and the railroad company, ten per cent. upon the judgment or decree which should be obtained. That is the point of difference between the parties.

" The defendant, so claiming that this was his contract and his sole liability, tendered to the plaintiff the sum of five hundred and forty-four dollars and some cents prior to the bringing of this action, and he has also paid it into court. It is not controverted, I believe, that this sum correctly

represents ten per cent. upon the overdue and unpaid interest if the contract related solely to the collecting of that interest and this five hundred and forty-four dollars and some cents would represent the fee to which the plaintiff would be entitled upon the basis of a contract of ten per cent. only upon interest collected, so that if you should come to the conclusion that this was the contract between the parties, and that the contract is not represented by this written instrument of May 27, 1884, your verdict should be for the plaintiff for the amount that has been paid into court, which, it is conceded, is due.

" The plaintiff, however, claims, in the first place, that he made no such contract, and that his rights and obligations to the defendant are represented by this instrument of May 27, 1884. He claims that if there was no contract between him and the defendant, yet his services were reasonably worth the sum charged—ten per cent. upon the amount of the decree that was rendered ; and he has offered evidence by the witnesses, Mr. McCormick and Mr. Barton, who testified in your hearing tending to show that the services rendered in that case in which Mr. Moore was counsel—the Cazenove case—were reasonably worth the sum of two thousand dollars or ten per cent. upon the amount of the decree that was recovered in that case to the extent of Mr. Burke's interest in that decree.

" This instrument of May 27, 1884, bears the signature of Mr. Claughton. It purports to be an agreement between John W. Burke and others who may come into the agreement and Mr. Claughton, and is signed by Mr. Claughton. If it was assented to by Mr. Burke or by any others who come into the arrangement it would be binding not only upon him, Mr. Claughton, but upon Mr. Burke and such others as might come into the arrangement.

" Mr. Burke says he did not sign this paper and that it is not his agreement. It appears that it was prepared by Mr. McKenzie, who was the holder of a number of these bonds, and that, having been prepared by Mr. McKenzie, it

was handed to Mr. Claughton for his signature, and, having
been signed by Mr. Claughton, it was taken by Mr. Mc-
Kenzie to the defendant and delivered to him, and remained
in his possession from that time on.    In order to be bind-
ing upon the defendant, Mr. Burke, it is not essential that
he should have signed this paper.    It is sufficient if he rec-
ognized it and acted upon it or gave Mr. Claughton reason
to understand that he did recognize it and authorized him
to act under it.    Under such circumstances as these he is
just as thoroughly and firmly bound by the terms of this
agreement as if he had actually signed it.

"The question of fact for you to determine in this case,
so far as this agreement is concerned, is simply this: Do
the circumstances indicate that although this paper was not
signed by Mr. Burke, yet it was his contract; that it was
so understood between the parties, and that it was so treated
by them and acted upon by them?   If you find from the
circumstances in evidence that it was so acted upon and so
acted upon and so treated by Mr. Burke and by Mr. Claugh-
ton, then the defendant is as much bound, as I have already
stated to you, by its terms as if he had affixed his signature
to it.

"Upon this subject I have granted instructions in behalf
of the plaintiff, which I will read to the jury: 'If, after the
contract of May 27, 1884, had been drawn up, the defend-
ant recognized it and assented to it unconditionally and ac-
cepted services in his own behalf done thereunder by the
plaintiff, he became as much bound by it as if he had signed
it.' "

" 'After such recognition and acceptance of service the
contract acquired, as between the plaintiff and the defend-
ant, all the qualities of other written contracts, so far, at
least as to be equally free with them from explanation or
change by secondary evidence.'

" 'In such case, upon the performance by the plaintiff of
his agreement, viz., to fix by judgment the liability of the
county of Clarke upon the bonds and upon such coupons

as should not be due at the date of such judgment and the collection thereby of such coupons as should be due, he had a right to call upon the defendant to pay him ten per cent. upon such judgment, and upon the refusal of the latter to do so, then he is entiled to recover the same in this action.'

" That is to say, gentlemen of the jury, the question of fact here is whether or not the defendant, after this paper was drawn up, recognized it and assented to it unconditionally and accepted the services of the plaintiff under it.    If so, he became bound by it.    The construction of a contract, then, is a matter for the court and not for you.

" If the circumstances in evidence are such as indicate that the defendant did not so conduct himself as to make this his contract, or if it appears that the evidence adduced in behalf of the plaintiff is not sufficient to satisfy your minds that this is the defendant's contract, under the circumstances of this case, then he is not obligated by it.

" If this is the defendant's contract and if the services were rendered by the plaintiff, as the evidence for both the plaintiff and defendant tend to show they were, and if the litigation in which Mr. Claughton rendered his services resulted in the fixing of the liability for the principal and coupons representing the interest due upon the county of Clarke and the railroad company and resulted also in fixing the liability or in the collection of the interest represented by the overdue coupons, then Mr. Claughton has thoroughly performed the services under his contract and it is simply a question of law what this contract means. · As matter of law, I tell you, gentlemen of the jury, that under this contract, if binding upon the defendant, the plaintiff is entitled to recover upon the decree so rendered the amount of ten per cent. upon the sum that is represented by the principal and interest of the bonds held by the defendant, Burke, which I believe is conceded to be nineteen hundred and eleven dollars.

" This question is presented by the fourth and fifth instructions granted to the plaintiff.

" ' The final decree in the Cazenove case directing payment of certain coupons and fixing liability for others and for the principal of the Clarke County bonds is a judgment within the meaning of that word contained in the contract in question.'

" ' If the jury believe that the defendant became a party to the writing of May 27, 1884, and that the plaintiff performed his part of the contract by obtaining a judgment fixing the liability of the county of Clarke upon the bonds and coupons due and to become due, then the plaintiff is entitled to recover in this action ten per cent. upon the principal and coupons of said bonds owned by the defendant, with interest thereon from the 5th day of February, 1887.'

" In this connection I will advert for a moment simply to the letter that has been offered in evidence, dated October 16, 1884, from Mr. Claughton to Mr. Manning. The evidence indicates that at the time this suit was instituted in the Circuit Court of the United States at Richmond, in order to confer jurisdiction upon that court, which cannot take cognizance of controversies between citizens of the same State, it was necessary to find an outside plaintiff. Mr. Manning and Mr. Kellogg were found, who were citizens of another State ; Mr. Manning, I believe, being a citizen of the State of Maryland, held some of these bonds. They were asked to come in and become parties to this suit simply for the purpose of conferring jurisdiction upon the Circuit Court of the United States. Mr. Manning demurred and desired to know what responsibility would be fixed upon him by becoming a party to this litigation. He said, in effect, that he did not desire to place himself in a position to assume liabilities which the bondholders in Virginia might be anxious to avoid, such as responsibility for costs, etc. Thereupon Mr. Claughton wrote this letter, in which he states to him with reference to this litigation which was then about to be instituted that the responsibility there, so far as fees were concerned, would be simply ten per cent.

upon the amount of coupons representing interest that should be collected by that litigation. He says, in this letter, that the contract he has with Mr. Burke and others is to that effect.

" It has been sought to use that letter as an expression by the plaintiff in the way of an interpretation of this contract, so as to make the contract, contrary to its express terms and stipulations, relate solely to a compensation of ten per cent. upon the interest collected. In the first place, it appears to me to be very clear from the evidence that such was not the idea intended to be conveyed by Mr. Claughton at the time. That letter should be construed with reference to its subject-matter. Its subject-matter was the litigation which related solely to the collection of the interest and did not relate at all to the fixing of the liability for the bonds and coupons not due. The letter does not change the contract, which in terms is explicit, and relates clearly to a decree that should be obtained fixing liability, as well as relating to interest ; and it cannot be taken into consideration by the jury as affecting this contract ; that is a question of law for the court.

" The defendant, as I have stated to you, claims that he had but one agreement with the plaintiff, and that was for ten per cent. commission upon the amount of interest collected. I have granted these instructions relative to that subject :

" ' If the jury shall find from the whole evidence that in the year 1884 the defendant employed the plaintiff as his counsel to obtain the payment of the interest then due and that to become due in respect of certain bonds referred to in the testimony in this case as Clarke County bonds, and agreed to pay the plaintiff and the plaintiff agreed to receive and accept as compensation for his professional services in respect of the collection of said interest ten per cent. of the amount of any interest that should be recovered or for which judgment should be obtained in respect of said bonds, and if the jury shall further find that th

defendant never promised or agreed to pay to the plaintiff for his professional services in respect of the said bonds ten per cent. on the amount of the principal of said bonds or on the amount of any judgment that should be obtained in respect of the principal of said bonds, then the the plaintiff is entitled to receive in this action a sum equal to ten per cent. of the amount of the interest recovered and received by the defendant in respect of said bonds, but the plaintiff is not entitled to recover ten per cent. of the principal of said bonds or any other sum in respect of the principal thereof.

" ' If the jury shall find from the whole evidence that the defendant received from Mr. McKenzie the paper-writing in evidence, dated May 27, 1884, signed by the plaintiff and put the same away in the safe of Burke & Herbert without reading the same or knowing its contents and never agreed or assented thereto and never at any time informed the plaintiff or authorized any person to so inform the plaintiff, then the defendant is not bound by the terms and conditions of said paper-writing.'

" That is to say, if he received this as Mr. McKenzie's paper and put it away in his safe without regarding himself as in any way a party to it and never assented or agreed to its terms and never gave the plaintiff reason to believe that he so assented or agreed to its terms, then he is not bound by it.

" The defendant's instruction No. 4 relates to the tender that has been referred to in the evidence.

" There is still another theory upon which the plaintiff has a right to recover, and that is the theory that there was no contract at all between these parties. If there was no contract between them and the compensation was not agreed upon at any fixed sum, then the plaintiff is entitled to recover from the defendant in this action such sum as his services were reasonably worth.

" Upon that theory of the case the plaintiff has offered evidence tending to show you what these services were rea-

sonably worth. The defendant, on the other hand, has offered by Mr. Moore testimony tending to show what he charged for his services.

" Now, to sum it all up, gentlemen of the jury, if there was a prior contract or agreement of an oral character between the plaintiff and the defendant relating to the services to be rendered in this regard, and that contract contemplated the payment of ten per cent. only upon interest collected, that contract would regulate and control the right of the plaintiff in this connection, unless it were subsequently absorbed by a new contract in writing—that is, this contract of May 27, 1884.

" If the contract of May 27, 1884, in your judgment, under the evidence in this case, became the contract of the defendant, then it regulates the right of recovery entirely, and the plaintiff is entitled to recover the amount of nineteen hundred and eleven dollars from the defendant.

" If there was no contract between the parties under the circumstances of this case, then the plaintiff is entitled to recover for his services what they were reasonably worth, and you should consider the testimony that has been offered upon that point both in behalf of the plaintiff and the defendant.

" If there was a contract solely relating to the recovery of interest, the amount of that interest has been tendered into court, and your verdict should be for that amount provided that there was no contract covering the whole amount of principal and interest which is embodied in the paper of May 27, 1884."—REPORTER.]

*Mr. George A. Mushback* and *Mr. Nathaniel Wilson* for the appellant :

1. The paper of May 27, 1884, not having been signed by the defendant, and it being essential to constitute a contract that the minds of the parties must meet and all the terms thereof agreed to by both parties, parol evidence was

admissible to show all the circumstances under which the agreement was made and the statements, oral or in writing, relative to their own intentions and understanding in respect of their obligations. The written statements and declarations made by the plaintiff and the defendant in the course of the execution of their agreement having been admitted in evidence, they were proper and essential parts of the case for the consideration of the jury.

2. The paper of May 27, 1884, was sufficiently ambiguous and obscure to justify the introduction of parol evidence to explain its meaning and to show the significance attached to its terms by the plaintiff and the defendant.

3. If the meaning of the letter of the defendant to Manning was to be determined by the court and not by the jury, the ruling of the court in respect of it was erroneous.

4. The practical interpretation of a contract by the parties thereto is entitled to great, if not controlling, influence. *Topliff* v. *Topliff*, 122 U. S. 121. When in the performance of a written contract both parties put a practical construction on it which is at variance with its literal meaning, that construction will prevail even over the language of the contract. *District of Columbia* v. *Gallagher*, 124 U. S. 505.

5. The direction of the court to allow interest from February 27, 1887, was erroneous. It was the province of the jury to determine whether interest should or should not be allowed. The decision of the Court of Appeals of Virginia was not rendered until September 29, 1887. The plaintiff undertook to collect the interest. No money was received in respect of principal or interest until after December, 1887.

*Mr. Samuel T. Phillips* and *Mr. Franklin H. Mackey* for the appellee :

The second instruction is treated by the exception as a unit, and, therefore, if either of the two propositions which it contains is correct the exception as to that instruction

must fail.   The two propositions were, (1) that the appellee, if the jury believed he performed his contract, was entitled to recover, as his measure of damages, ten per centum upon the principal and coupons of the bonds; (2) that he was entitled to *interest* upon such ten per centum from the 5th of February, 1887.

In the case of *Mobile, etc., Railway Co.* v. *Jurey,* 111 U. S., 584, the Supreme Court said as follows:

" The error alleged is, that the rate of interest should have been placed at 5 per cent., which is the legal rate in Louisiana, where the contract was to be performed, and not at 8 per cent., which was the legal rate in Alabama, where the contract was made.

" Conceding that the charge in respect to the rate of interest was erroneous the judgment should not be reversed on account of that error.   The charge contained at least two propositions : First, that the measure of damages was the value of the cotton in New Orleans, with interest from the time when the cotton should have been delivered; second, that the rate of interest should be 8 per cent.   It is not disputed that the first proposition was correct.   But the exception to the charge was general.   It was therefore ineffectual.   It should have pointed out to the court the precise part of the charge that was objected to."

Even conceding the date from which interest is to run, to be wrong, and that there is a proper exception to the error, nevertheless it is not *reversible* error.   Interest should run from *some* date, and if it is in the power of the court to notice the error when there is no proper exception to it, the court may fix the right date and affirm the judgment accordingly.

The subject-matter of the correspondence with Manning and Kellogg was *diverso intuitu,* concerning a suit then projected for the purpose of collecting certain over-due coupons, and for no other purpose (especially not to fix liability upon Clarke County), which Manning and Kellogg were to put in course of collection.   It was, therefore, cor-

rect to say, as was said in both letters, that the contract betwixt the appellant and appellee, so far as over-due coupons were concerned, that being the *only* matter in which Manning and Kellogg were interested, and, therefore, to which the attention of the writer of the letters was directed, was ten per cent. thereupon.

Again, however true it may be that admissions in writing made to one party by another as to the meaning of a former contract in writing betwixt themselves are *evidence* against the writer, such admissions would have no quality of estoppel *in pais* (*i. e., conclusiveness*), thereabouts, unless made upon some consideration (*ex gr.*, profit to one, or, vice versa, loss, etc.), moving from the other party. But that instruction required the court to say to the jury that the supposed admissions were *conclusive* in the present suit, "*not within the power*," etc. It is familiar law that if an instruction in the very words be not correct, it may be refused entirely. The court is not called on to modify it.

The 4th exception of the appellant is liable to similar remarks and to like objections with those just submitted in connection with exception 3. It *combines* several propositions of law, commits the whole of them to the jury, and makes the letter to Manning conclusive as to the verdict.

Mr. Justice MORRIS delivered the opinion of the Court:

It is not quite apparent by what process the sum of $1,911 was reached which the court below directed the jury to return as the amount of their verdict in the event that they should find the contract between the parties to have been in accordance with the appellee's contention ; but it seems to have been acquiesced in by counsel for the appellant, and no point is made of it here. There is controversy, however, in regard to the date from which that sum should bear interest, which in the judgment is given as February 5, 1887, in accordance with the appellee's claim in his declaration. That this is plain, palpable error,

is beyond any possibility of doubt. There is no foundation whatever for it in the testimony; and why the appellee should have inadvertently caused the error by the statement of his claim as of that date in his declaration, remains unexplained either in the brief or in the oral argument on his behalf, in both of which the effort is to show, in view of the decision of the Supreme Court of the United States in the case of *Mobile, &c., Railroad Co.* v. *Jurey*, 111 U. S. 584, that the error, palpable though it is, cannot be corrected here, because, as it is claimed, the instruction in which the error was pointed out in the court below contained two propositions, one of which is claimed to be good. But whether the present case may not be distinguished from that, it is unnecessary for us here to determine, inasmuch as we think our decision of this case may be placed upon other grounds that appear in the record. In view, however, of the fact that a new trial must necessarily be had, we think it proper to direct attention to the fact that, certainly not before the final decree of the Court of Appeals of Virginia, which was on September 29, 1887, and probably not before February 1, 1888, the day on which the appellant collected the overdue coupons, according to his uncontroverted statement, could the appellee properly have made demand for his compensation, and the right to interest have accrued from the appellant's refusal to pay it. We presume that the date intended to be stated by the appellee was February 7, 1888, and not February 7, 1887.

But we think that a graver error than that regarding the matter of interest appears in the record. The third and fifth instructions requested by the defendant and which were refused by the court, sought to raise the question as to the effect to be given to the letters addressed by the parties to Manning and Kellogg as constituting what the appellant claims to have been the contemporaneous construction put by both parties upon their contract. By the refusal of these instructions and by its subsequent charge to the jury, the latter were directed to disregard these let-

ters as having no bearing whatever upon the contract; and they were told that the contract itself was a question of law for the court. We cannot assent to these propositions.

The terms of the contract between the parties constituted the very question in controversy between them. That there was a contract between them, is conceded. It is not conceded that it was reduced to writing. On the contrary, it is virtually admitted by both parties that, in the first instance, at least, the contract, as originally made in the autumn of 1883, was merely verbal, as had been all similar contracts of the parties, that is, all their contracts for professional services for upwards of twenty years; and the memorandum of May 27, 1884, was not suggested, originated, or in any manner procured by either of the parties to this suit, so far as the present record discloses. The appellant, while he admits to have received this memorandum from McKenzie, who drew it up probably for his own benefit, denies that he knew anything of its contents until long afterwards; and this, under all the circumstances, is not entirely improbable. It is not claimed that he executed it, or had anything to do with its inception or preparation. It was executed by Mr. Claughton alone; and the claim of the appellee is that it was accepted by the appellant, and thereby became his contract. But the acceptance is matter *in pais*, and being matter *in pais*, it left the whole transaction in parol, and remitted its determination to the jury. Whether it was accepted, therefore, by the appellant, and if accepted by him, whether with or without qualification; and if not accepted by him, whether the parties did not thereafter proceed under the verbal understanding or agreement of the previous autumn of 1883, and what the terms of that understanding were—all these were questions for the jury to decide; and the memorandum was not itself the contract between the parties, but merely one item of evidence to show what the contract was. The letters to Manning and Kellogg were items of evidence of equal importance to the memorandum, and equally competent to show the charac-

ter of the transaction between the parties; and there was, therefore, no just reason to exclude them from the consideration of the jury. They had been admitted in evidence without objection, and properly admitted; for they were not *res inter alios acta*, but part of the *res gestæ*—explicit representations made in solemn manner to those who were intended to be included in the agreement, and one of whom at least came into the agreement upon the faith of such representations. We presume it could scarcely be claimed with any show of reason that Kellogg or Manning would have been bound by the memorandum of May 27, 1884. They at least could have stood on the terms of the letters addressed to them; and it would be a strange conclusion, under the circumstances of this case, that the contract, if the memorandum be regarded as such contract, which purported on its face to be the same for all who came into the arrangement, should be construed to be one thing for the appellant and another thing for Kellogg. The enterprise was one; the contract of one was evidently the contract of all; and it should be construed the same for all. It is very clear to us, therefore, that the deliberate statement in writing, purporting to have been made by the appellee after conference with the appellant and purporting to be a precise and accurate statement of what the contract was, made to a third person for the purpose of inducing that third person to become a party to the contract and who did in fact become a party to the contract upon that representation of what it was, should have been taken into consideration by the jury in determining what it was, and that it was grave error to direct the jury to disregard it.

The views here stated are abundantly supported by authority. *Bailey* v. *Hannibal & St. Jo. Railroad Co.*, 17 Wall. 96; *Pacific Iron Works* v. *Newhall*, 34 Conn. 67; *Rawson v. Haigh*, 2 Bing. 99; *Hill* v. *Miller*, 76 N. Y. 32; *Stoops* v. *Smith*, 100 Mass. 63; *Thorington* v. *Smith*, 8 Wall. 1; 1 Greenleaf on Evidence, sec. 283.

But even upon the assumption upon which the court be-

low seems to have rested its decision, that the memorandum of May 27, 1884, constituted in itself a complete contract, it is not apparent to us that the letters in question may not be admissible to show how the parties understood that memorandum. The terms of that instrument cannot reasonably be claimed to be entirely clear and free from all doubt. There are ambiguities in it that might be removed by extraneous testimony. And whatever may be the proper judicial construction of it if it stood alone, there is certainly reasonable room for doubt as to what the parties meant by the expression, "*the amount of the judgment*," upon which the compensation was to be based. The appellant here claims that this meant the amount of money that should be adjudged to be due upon the coupons ; the appellee, on the contrary, claims that this meant the whole amount of the principal and interest of the bonds, although there could not be any actual present judgment for that principal or for the coupons that had not yet matured. Both claims are reasonable enough in themselves ; and therefore, in the obscurity or ambiguity of the terms used, which is a latent ambiguity arising out of extraneous circumstances, it would seem not to be improper to permit evidence to show what interpretation the parties themselves put upon their understanding or agreement at the time or about the time at which it was made and before there was any contemplation of dispute or litigation upon the subject.

But this point it is unnecessary for us to decide. It is sufficient for us to rest our opinion upon the broad ground that there was in this case no completely executed contract in writing, binding as such upon all the parties to the transaction ; that the contract therefore rested in parol, and that to show what it was the statements of the parties, whether written or oral, that were made at the time to induce others to enter into it, were proper to be considered by the jury. The letters which the jury were told to disregard were statements of that character ; and while these statements are not, in the present suit and as between the present par-

ties, to be regarded as conclusive or as operating by way of estoppel, they are to be taken into consideration for what they may be worth to throw light upon the transaction between the parties and to determine what their contract really was.

Being of this opinion, we think that there was error in the rulings of the court below, for which *the judgment of that court must be reversed, with costs, and a new trial ordered. And it is so ordered.*